# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLIN M. BRANCA,                       :

           Plaintiff            :

           v.                   :

TARGET CORPORATION,          :     Case No.: 2:23-cv-04459-TJS

           Defendant        :

**DEFENDANT TARGET CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND <u>TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)</u>**

Dated: February 5, 2024              BARNES & THORNBURG LLP
                                        Regina S.E. Murphy, Esquire
                                        Attorney I.D. No. 309332
                                        William J. Burton, Esquire
                                        Attorney I.D. No. 322269
                                        BARNES & THORNBURG LLP
                                        222 Delaware Avenue, Suite 1200
                                        Wilmington, DE  19801
                                        (302) 300-3475
                                        gigi.murphy@btlaw.com
                                        william.burton@btlaw.com

                                        *Attorneys for Defendant Target Corporation*

## TABLE OF CONTENTS

**Page**

I.   SUMMARY OF ARGUMENT................................................................................ 1

II.  BRIEF STATEMENT OF FACTS ....................................................................... 3

III. ARGUMENT .......................................................................................................... 6

    A.   The Exculpatory Clause in All Three of the Parties' Contract Bars All of Plaintiff's Claims. ...................................................................................... 6

    B.   Plaintiff Fails to Plausibly Allege His Claims. .................................... 12

        1.   Plaintiff fails to plausibly allege facts supporting his damages claims. ........ 13

        2.   Plaintiff fails to plausibly allege a Lanham Act claim. ................................. 16

        3.   Plaintiff fails to plausibly allege Counts III and IV. ..................................... 17

    C.   Any Claims for Conduct Prior to April 2023 Are Barred By the Statute of Limitations, Accord and Satisfaction, and Plaintiff's Own Statements................ 19

        1.   The Statute of Limitations Bars Plaintiff's Claims Prior to the 2022 Contract ....................................................................................... 20

        2.   Accord and Satisfaction Also Bars Plaintiff's Pre-April 2023 Claims. ........ 21

    D.   The Court Should Strike the Portions of The Complaint Relying on Material Disclosed Pursuant to FED. R. EVID. 408. ........................................................... 22

IV.  CONCLUSION ..................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Diabetes Assoc. v. Friskney Family Trust*,
    177 F. Supp. 3d 855 (E.D. Pa. 2016) ....................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................9, 12, 14, 18

*Bergman v. Jefferson-Pilot Life Ins. Co.*,
    No. Civ. A. 03-4459, 2003 WL 23142155 (Dec. 30, 2003) ...................................23

*Del. Health Care Inc. v. MCD Holding Co.*,
    893 F. Supp. 1279 (D. Del. 1995) ..........................................................................22

*Electra v. 59 Murray Enters., Inc.*,
    987 F.3d 233 (2d Cir. 2021) ...................................................................................17

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 ...........................................................................................................3

*Facenda v. NFL Films¸*
    542 F.3d 1007 (3d Cir. 2008) .....................................................................16, 17, 21

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) ................................................................10, 11

*Haelan Labs. Inc. v. Topps Chewing Gum, Inc.*,
    202 F.2d 866 (2d Cir. 1953) ...................................................................................20

*Marsulex Envtl. Techs. v. Selip S.P.A.*,
    247 F. Supp. 3d 504 (M.D. Penn. 2017) ..................................................................6

*Monarch v. Gorman*,
    No. 14-cv-5980, 2015 WL 5584555 (E.D. Pa. Sep. 22, 2015) ................................18

*Occidental Chem. Corp. v. Envtl. Liners, Inc.*,
    859 F. Supp. 791 (E.D. Pa. 1994) .....................................................................21, 22

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)....................................................................................18

*Princeton Sportswear Corp. v. H&M Assocs.*,
    507 A.2d 339 (Pa. 1986)................................................................................10

*Seaton v. East Windsor Speedway, Inc.*,
    582 A.2d 1380 (Pa. Super. 1990)....................................................................9

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000).........................................................................19

*The Choice Is Yours, Inc. v. The Choice Is Yours*,
    No. 2:14-cv-01804, 2015 WL 5584302 (E.D. Pa. 2015 Sept. 22, 2015)........................*passim*

*Topp Copy Prod., Inc. v. Singletary*,
    626 A.2d 98 (Pa. 1993).........................................................................6, 7, 12

*Valhal Corp. v. Sullivan Assocs., Inc.*,
    44 F.3d 195 (3d Cir. 1995)...........................................................................9

**Statutes**

Pa. C.S.A. § 8316........................................................................................20, 21

2 Pa. C.S.A. § 5523(1)......................................................................................20

42 Pa. C.S.A. § 5524(7)....................................................................................20

15 U.S.C. § 1125.............................................................................................20

15 U.S.C. § 1125(a)..........................................................................................16

15 U.S.C. § 1125(a)(1)......................................................................................21

Lanham Act....................................................................................16, 17, 20, 21

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................................................................................19

Fed. R. Civ. P. 12(f)........................................................................................22

Fed. R. Evid. 408..................................................................................3, 12, 22, 23

## I.  SUMMARY OF ARGUMENT

In his Amended Complaint, Plaintiff Colin Branca ("Plaintiff"), a professional model, contends that Defendant Target Corporation ("Target") allegedly harmed Plaintiff by using his image to promote products at Target stores after the expiration of the Term of Plaintiff's 2022 "Talent Contract" with Target on April 21, 2023..  DE 14 ¶¶ 11, 27-28, 32, 66; *id.* Ex. B. Plaintiff alleges that he had a first Talent contract with Target in 2018 ("2018 Contract"), and that the 2022 Contract was his second contract with Target, entered into to compensate for Target allegedly using his image without permission after the 2018 contract expired.  *Id.* ¶¶ 18-20. Tellingly, Plaintiff attaches only page one of his 2018 contract, and equally as important, wholly omits to inform the Court concerning a key contract between Target and Plaintiff executed in 2019 ("2019 Contract").

In all three contracts, Plaintiff specifically agreed to an exculpatory clause (which Plaintiff never mentioned in his initial pleading) providing that Plaintiff would have no cause of action against Target for materials placed during the contracts' Term that "remain on display or in circulation following expiration of the Term":

> - Any materials placed during the Term which may remain on display or in circulation following the expiration of the Term shall not give rise to a claim against the Licensed Parties, provided, however, that the Licensed Parties shall not place any additional materials produced hereunder in any media (other than as permitted herein) following the expiration of the Term.

DE 14, Ex. B at 2 ("For Models Only" provision, second paragraph); Declaration of Jillian Sukup ("Sukup Decl.") **Ex. 2** (2018 Contract at 2, ("For Models Only" provision, second paragraph); Sukup Decl. **Ex. 3** (2019 Contract at 2, ("For Models Only" provision, second paragraph).

As shown below, Plaintiff's Amended Complaint should be dismissed because of the exculpatory clause and for other additional reasons.

First, Plaintiff pleads no facts creating a reasonable inference that there is any violation of the parties' 2022 Contract because he has no plausible facts that any materials at issue in the case that were not on display prior to the expiration of the Term on April 21, 2023. Instead, Plaintiff alleges that materials are purportedly "placed on display" by Target every time a store opens its doors and turns on the lights after being closed at night, and thus the exculpatory clause does not apply. DE 14 ¶¶ 40-52 (alleging "Each morning, A new Display"). The Court may exercise its common sense in refusing to give weight to such a specious contention. *See The Choice Is Yours, Inc. v. The Choice Is Yours*, No. 2:14-cv-01804, 2015 WL 5584302, at *3 (E.D. Pa. 2015 Sept. 22, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Plaintiff also contends, "on information and belief" and with no supporting facts making the belief reasonable, that it is supposedly "highly likely" that all of Target's 1900+ stores have been renovated or redesigned since April 21, 2023, and that Target therefore "placed" Plaintiff's image into use anew whenever Target remodeled or re-designed its stores by allegedly putting a copy of Plaintiff's image back up after doing so. DE 14 ¶¶ 53-56.

Setting aside this outlandish interpretation of the contract and pure speculation regarding alleged store re-models (about which Plaintiff now seeks burdensome discovery), Plaintiff does not allege any facts supporting a reasonable inference that Target violated the contract terms by producing "additional materials produced under" the contract, placing new materials into use, or otherwise engaging in any new uses of Plaintiff's image after April 21, 2023. *See Iqbal*, 556

2

U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  *See also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (pleading "on information and belief" requires pleading facts "upon which the belief is reasonably based").

Instead, Plaintiff's amended allegations are conclusory and mere speculation, with no facts alleged that lend plausibility to Plaintiff's assumptions.  The Court should enforce the agreed-upon terms in the parties' contract, find that the exculpatory clause mandates dismissal, as shown below, and put an end to Plaintiff's shake-down tactics.

Second, the Court should dismiss Plaintiff's claims because Plaintiff's threadbare allegations concerning the damages he claims do not pass the test articulated in *Iqbal*.

Third, the Court should strike the portions of the complaint improperly relying on statements made pursuant to FED. R. EVID. 408, in no small part because Plaintiff's assertions regarding those statements are untrue.

## II.    BRIEF STATEMENT OF FACTS

Plaintiff and Target entered into three Talent contracts for the use of Plaintiff's image. DE 14, Ex. B; Sukup Decl. **Exs. 2-3.** Although Plaintiff contends he is only claiming liability and damages based on the third one, the 2022 Contract, as discussed in section III. C. below, Plaintiff alleges certain conduct related to the 2018 **and** 2022 contracts. DE 14 ¶¶ 10-27. Plaintiff fails to mention the 2019 Contract anywhere in his pleading.  All three contracts are relevant to show the lack of foundation for Plaintiff's claims, and that Plaintiff's allegations are barred by the contract terms.

Each contract was a template of only two pages where the parties entered negotiated terms of price, duration, and other details.  *See* DE 14, Ex. B; Sukup Decl. **Exs. 2-3**.

In the 2018 Contract, Target agreed to pay Plaintiff a fee of $3500 for a period of six months, from May 6, 2018-November 6, 2018.  *See* DE 14, Ex. B at 1.  The fee "include[d] usage rights for the Term," and a five-hour "Print" photo shoot.  *Id.*  Plaintiff elected to have his fees sent directly to his agent, who was paid a 20% fee.  *See id.* The 2018 Contract also gave Target the right of "Optional Re-Use."  *Id.*  Although Plaintiff, who has the burden, omitted the second page of this contract from the Complaint, Target has included that second page showing that Plaintiff agreed to the exculpatory clause discussed above in his 2018 Contract. *See* Sukup Decl., **Ex. 2**.

Target has included this exculpatory clause provision in its Talent Agreements since 2016 whereby a model, like Plaintiff, agrees there will be no claim against Target for continued use of an image following the expiration of the contract Term. *See* Sukup Decl., ¶¶ 4-6 and **Ex. 1** thereto.

In the parties' 2019 Contract, Target agreed to pay Plaintiff a fee of $5000 for a Term of 19 months to commence no later than March 31, 2020.  There was no time or rate set for a photo shoot, and instead the contract is one for "CSE Talent Reuse," as noted in the "Project Name/Title" box on page 1.  Sukup Decl. **Ex. 2**.  The Contract was executed in October 2019. *See id.* Plaintiff again elected to have his fees sent directly to his agent.  *See id.* The 2019 Contract also shows that Plaintiff agreed again there could be no claim against Target for continued use of Plaintiff's image following the expiration of the contract Term. *See id.* at 2 ("For Models Only" provision, second paragraph).

In the parties' 2022 Contract, Target agreed to pay Plaintiff a fee of $6500 for an 18-month Term.  *See* DE 14, Ex. B.  The 2022 Contract was executed in mid-February 2022, but its Term began retroactively four months prior to contract execution, on October 21, 2021, and ran

until April 21, 2023.  *See id.* at 1.  Thus, the parties agreed in the 2019 and 2022 contracts to combined Terms that ran from March 31, 2020, until October 31, 2021.  Like in the 2019 Contract, there was no photo shoot in the 2022 Contract (the relevant sections on page 1 of the contract regarding time and hourly rate are blank) and instead, as the contract's project name ("CSE 2022 Re Usage") indicates, the parties agreed that Target would re-use the same Plaintiff image it had used under the 2018 and 2019 Contracts.  *See id.* Plaintiff again elected to have his fees sent directly to his agent.  *See id.*  The 2022 Contract also shows that Plaintiff agreed again there could be no claim against Target for continued use of Plaintiff's image following the expiration of the contract Term.  *See* DE 14, Ex. B at 2 ("For Models Only" provision, second paragraph).

Plaintiff alleges, with no facts in support, that he raised alleged concerns with Target that Target was using his image without his authorization after the Term of the 2018 Contract expired, and that he then entered into the 2022 Contract with a Term that "retroactively authorized Target to use Mr. Branca's likeness" during the period of the alleged unauthorized use prior to the 2022 Contract. DE 14 ¶¶ 18-20.  Plaintiff further alleges that he became aware in August 2023 that his image was being used in a single Target store after the expiration of the parties' 2022 Contract, and he attaches images from that single Target store to his complaint. *See* DE 14 ¶ 18; *id.*, Ex. C at 8-11.

On that basis, Plaintiff brought suit in this Court against Target three months later, on November 13, 2023, alleging "on information and belief" that his image remains on display in 1956 Target stores, when his counsel clearly knows that is not true, and alleging a slew of state-specific causes of action. DE 14 ¶ 32 and Counts III & IV; *see also* Section III. D. below. Plaintiff does not allege facts showing that he states a claim. Further, Plaintiff's glaring failure to

apprise the Court that his 2019 Contract permitted continuous use of until the beginning of the Term of the 2022 Contract further shakes the foundation of his tenuous assertions that Target intentionally and repeatedly used his image without his consent, which allegedly entitles Plaintiff to punitive damages.  *See* DE 14 ¶ 86.

### III.    ARGUMENT

**A. The Exculpatory Clause in All Three of the Parties' Contract Bars All of Plaintiff's Claims.**

Mr. Branca has no claim. Simply put, each agreement with Target, including the 2022 Contract on which he bases his claims, expressly disavows any claim based on the exact conduct Plaintiff alleges.  An "exculpatory clause[] immunize[s] a party from the consequences of his or her negligence," and is permissible under Pennsylvania law so long as certain conditions are met. *Marsulex Envtl. Techs. v. Selip S.P.A.*, 247 F. Supp. 3d 504, 511-12 (M.D. Penn. 2017).

"It is generally accepted that an exculpatory clause is valid where three conditions are met. First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion." *Topp Copy Prod., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993) (citations omitted).  In addition to finding an exculpatory clause valid, the court must determine that "the language of the parties is clear that a person is being relieved of liability for his own acts of negligence," and be guided by the following principles:

> 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden

> of establishing the immunity is upon the party invoking protection
> under the clause

*Id.* (citation omitted).

Here, the language in all three of parties' contracts clearly and unambiguously shows that Plaintiff has no cause of action in this case, because he agreed that there could be no claim against Target for the very conduct about which Plaintiff now complains: *i.e.*, Plaintiff's image remaining on display following the expiration of the 2022 Contract Term on April 21, 2023. *See* DE 14, Ex. B at 2 ("For Models Only" provision, second paragraph); Sukup Decl. **Exs. 2-3** at 2. Although Plaintiff, who has the burden, omitted the second page of his 2018 Contract from the Complaint, Target has used the same language in its Talent Agreements with models since 2016, and Plaintiff knowingly agreed in his 2018 and 2019 contracts to the identical provision. *See* Sukup Decl. ¶¶ 4-6 and **Ex. 1-3** thereto.

Plaintiff does not allege that Target placed any "additional materials" using Plaintiff's image after the Terms expired.  Instead he alleges, risibly, that the re-opening of a Target store each day constitutes a new display, as shown in the passages from the Amended Complaint quoted below alleging "Each morning, A new Display":

> 40.     While undefined by the 2022 Target Model Contract, the "display" of a visual work such as a photograph is a showing of a viewable copy thereof to actual sighted humans, perceptible to the human eye, in a place open to the public, where a substantial number of persons outside of a normal circle of family and friends are gathered.
>
> 41.     As such, any copy of any photograph, image, or likeness of Mr. Branca that was "on display" at any/all Target stores on Sunday, April 21, 2023, was <u>no longer</u> "on display" <u>after</u> each store closed to the public at 10:00 p.m., as all Target stores do.
>
> 42.     Thus, any such "material" which <u>may</u> have been "placed during the Term", did <u>not</u> "*remain* on display" "following the expiration of the Term".
>
> 43.     If any such "material" were <u>again</u> put "on display" to the public, upon the next day's store opening at 8 a.m.—as they in fact were—then such would constitute an entirely <u>new</u> display, rather than material which "*remained* on display".
>
> 44.     Clearly, material was <u>not</u> "on display" while stores were closed, with the lights off, doors locked, and entry by the public prohibited by law.

DE 14 ¶¶ 40-44.  *See also id.* ¶ 52 ("Mr. Branca's photo was thus put on display to the public each day at 8:00 a.m., for 14 hours, then was off display while the stores were closed, then put on display anew the next day—a process that, upon information and belief, persists to this day.").

Plaintiff also alleges that each time a sign is moved within a store and put back up again it is supposedly newly "placed."  *Id.*  ¶¶ 40-52.  Nothing in the parties' contracts supports such conclusions about dual meanings for "remain on display" or "placed," and the Court need not credit allegations that defy commonsense.  *Iqbal,* 556 U.S. at 678; *The Choice Is Yours*, 2015 WL 5584302, at *3.

Leaving existing materials on display, whether the stores lights are off or on, or the doors are locked or unlocked, whether the store is re-arranged or re-modeled, is permitted under the contract to which Plaintiff agreed.  Plaintiff's tortured interpretation of the exculpatory clause would render it a nullity, whereby the only way Target could exercise its bargained-for right to continue displaying an already in-use image is to suddenly operate a 24/7 brick-and-mortar retail store. No rational reading of this provision could support such an unfounded position.[1]

The only exception to the exculpatory provision is for the placement of "additional materials produced" under the contract "in any media."  *Id.*  Plaintiff alleges no facts from which the Court can reasonably infer that Target placed on display any "additional materials" produced under the contract.  Plaintiff is required to "allege facts suggestive of [the complained of] conduct" in support of his claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, n.8 (2007). He has not done so here.

The Court should find that the exculpatory clause in the parties' contracts is enforceable because all conditions of enforceability are met. The clause does not contravene or involve any public policy and is related entirely to the private affairs of the two parties.  "In order for a contractual provision to violate public policy the provision must involve a matter of interest to the public or the state." *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 206 (3d Cir. 1995). "Such matters of interest to the public or state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." *Seaton v. East Windsor*

---

[1] Tellingly, and as discussed above, Plaintiff only acknowledged the exculpatory clause and crafted his related view of it in his amended complaint after Target filed its motion to dismiss Plaintiff's original complaint. DE 12. Such an eleventh hour defense to clear contract language that Plaintiff agreed to three separate times cannot unwind the clock and undo Plaintiff's acceptance of this provision.

*Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa. Super. 1990). No such matter of public interest is at issue here.

Each party also bargained freely concerning the terms of the agreement.  This is not an adhesion contract "whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely."  *Princeton Sportswear Corp. v. H&M Assocs.*, 507 A.2d 339, 341 (Pa. 1986) (finding exculpatory clause in lease "valid and enforceable" where the lease was negotiated and modified by both parties and their agents).

In an adhesion contract, the weaker party goes "without an opportunity to negotiate or bargain," but "[a] contract is not necessarily one of adhesion simply because it is a form contract." *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 240, 241 (E.D. Pa. 2007). Where plaintiff  is "a sophisticated purchaser, . . .[who] was not in any way pressured to agree to [Defendant's] Agreement, was capable of understanding the Agreement's terms, consented to them, and could have rejected the Agreement with impunity," there is no contract of adhesion. *Id.* at 240.

Here, Plaintiff clearly had the power to alter the terms of the contract and is a sophisticated party to the transaction.  Plaintiff had an agent representing him in all three contracts he signed with Target, *see* DE 14 Exs. B; Sukup Decl. **Exs 2-3**. He alleges his "likeness has considerable commercial value," based on his "past Target Talent Contracts and Mr. Branca's **<u>extensive</u>** work with other high-profile brands."  DE 14 ¶ 83 (emphasis added). Plaintiff negotiated terms such as length of contract and how much he would be paid, and indeed negotiated that he would be paid retroactively for a four-month period of time before he even entered into the 2022 Contract.  *See* DE 14 ¶ 20 ("Target was retroactively authorized to use Mr.

Branca's likeness from October 21, 2021"); *id.* Ex. B at 1-2 (showing Term began on October

21, 2021, four months prior to execution in February 2022).

Moreover, these are simple, two-page contracts that Plaintiff could easily read and

understand prior to signing each of the three times he did so.  Plaintiff's only argument against

enforcing the clause is that the terms "remain on display," "placed," and "materials" are

purportedly ambiguous.  DE. 14 ¶ 26. They are not.

Target is a *brick-and-mortar retail store*: it takes no special knowledge or sophistication

to understand how a model's image will be used in in-store advertising, especially by the *third*

time Mr. Branca agreed to that term. Indeed, a model who has purportedly represented "high

profile brands" such as Calvin Klein and Nike, DE 14, ¶ 2, cannot feign ignorance at how

marketing "materials" that include his image are "placed" in-store and "remain on display" for

customers. Moreover, the term "materials" is used throughout the parties' contracts, including

the 2022 Contract, and Plaintiff does not allege any facts showing that this term is ambiguous.

DE 14, Ex. B at 2 (showing numerous occurrences of the word "materials" in various provisions

and Plaintiff agreeing to those provisions).

As a sophisticated party with allegedly "extensive" experience with modelling contracts

who negotiated different price and term lengths, and different uses of his image in three contracts

with Target, and who negotiated to be paid for four months of use prior to execution of the 2022

Contract, Plaintiff cannot he heard to complain he was forced into a contract where he did not

understand what he was signing or was powerless to change any terms.  *See, e.g.*, *Feldman*, 513

F. Supp. 2d at 241 (finding no contract of adhesion where plaintiff was a sophisticated

professional capable of understanding contract terms, "was not in any way pressured to agree to

[the] Agreement, was capable of understanding the Agreement's terms, consented to them, and could have rejected the Agreement with impunity").

These facts lend further weight to a finding that the exculpatory clause is enforceable under the guidelines articulated in *Topp*.

Plaintiff alleges no facts showing Target acted outside the scope of the parties' agreement.  Indeed, Plaintiff does not even allege facts showing that his image continued to be used at any of Target's 1900+ stores at the time the original complaint was filed, except by improperly attempting to rely on FED. R. EVID. 408 evidence and making false statements about that evidence. *See* Declaration of Patrick Gallagher ("Gallagher Decl.") ¶¶ 3-4; Section III. D. below.

The Court should therefore find that all Plaintiff's claims are barred by the valid and enforceable exculpatory clause Plaintiff agreed to.

### B.    Plaintiff Fails to Plausibly Allege His Claims.

Plaintiff is required to state his claims with "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and must instead "before proceeding to discovery, allege facts suggestive of [the complained of] conduct." *Twombly*, 550 U.S. 555, 563, n.8. The Supreme Court established the now-ubiquitous pleading standard in *Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

556 U.S. at 678 (cleaned up).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *The Choice Is Yours*, 2015 WL 5584302, at *3 (dismissing claim for misappropriation of name or likeness for failure to state a claim where Plaintiff failed to plausibly plead that defendant used his likeness).

### 1. Plaintiff fails to plausibly allege facts supporting his damages claims.

The Court should dismiss all Plaintiff's claims for liability and damages because Plaintiff's threadbare recitals fail to state a claim under the *Twombly-Iqbal* standard.

Similarly, the Court should dismiss Plaintiff's claims for punitive damages based on the conclusory allegation, with no facts lending any plausibility whatsoever that would "allow the court to draw the reasonable inference," that Target supposedly "purposefully" used Plaintiff's image for commercial gain without his permission. *Iqbal*, 556 U.S. at 678 (court must dismiss where the facts pled "do not permit the court to infer more than the mere possibility of misconduct").

Plaintiff contends he is entitled to damages, including punitive damages, because:

a) Target allegedly continued to use Plaintiff's image as "the face of the [Goodfellow] line" of products in all Target stores in all 50 states and the District of Columbia after the expiration of the Term of the parties' 2022 Contract  and continues to do so, despite no facts pled making this claim plausible;

b) Target was allegedly aware, despite no facts pled making this claim plausible and only by omitting Plaintiff's 2019 Contract, that it had used Plaintiff's "likeness without authorization from November 7, 2020 to October 20, 2021 and was caught doing so";

c) Target purposefully violated Plaintiff's right to privacy; and

d) "Upon information and belief," Target purportedly continues to display Plaintiff's "likeness in some or all of Target's 1,956 stores."

DE 14 ¶¶ 7, 13-14, 32, 95, 102.

However, the Amended Complaint is devoid of any facts supporting these baseless positions.

Plaintiff alleges no facts making it plausible that he was the "face" of the Goodfellow line of products, and the low dollar figures and short term nature of his contracts with Target cast doubt on his bald faced assertion.

Plaintiff also alleges no facts making it plausible: (1) that Target used Plaintiff's image in all, most, or a particular number its stores nationwide after the contract Term or that Target continues to do so;  or (2) that Target was aware of any unauthorized use of Plaintiff's image from November 7, 2020 to October 20, 2021, as Plaintiff alleges (DE 14 ¶ 69), especially in light of the authorization for Target to use Plaintiff's image under the 2019 Contract that Plaintiff omits from his pleading.  Sukup Decl. **Ex. 3.**  Plaintiff's bald allegation the Target acted willfully or intentionally in using Plaintiff's image after the contract Term expired is similarly devoid of a single facts in support. *See* DE 14 ¶ 58 and Counts III and IV and Prayer for Relief (alleging "purposeful" privacy violations and claiming right to punitive damages with not a single fact in support). *See Twombly*, 550 U.S. at 557 ("conclusory allegation[s]" do not comprise "facts adequate to show illegality").

Plaintiff attaches his two modelling contracts with Target to his complaint:  one for six months in 2018 for $3500 (including a five-hour photo shoot) and one for 18 months for $6500 ($361 per month).  *See* DE 14, Ex. A at 1 & Ex. B at 1.  Neither of these contract's terms or amounts, or those in Plaintiff's 2019 contract (Sukup Decl. **Ex. 2**), states anything about use for any particular brand or in any particular stores or number of stores, or supports Plaintiff's allegation that he was the "face" of the Goodfellow brand, or any other brand.

If as Plaintiff speculates, Target had used Plaintiff's image in 1956 Target stores at the rate of $361 per month as provided in the 2022 Contract, that equates to $.18/store per month. It defies logic that Plaintiff can be the "face" of one of the largest owned brands in retail while having such a *de minimus* value for use of his image. Moreover, if the parties intended that Plaintiff be the "face" of the Goodfellow brand as Plaintiff alleges, Plaintiff has no explanation for why the parties never contracted for a second photo shoot for any new images after the 2018 contract. *See* DE 14 Ex. B; Sukup Decl. **Exs. 2-3**.

Plaintiff alleges that he became aware in August 2023 that his image was being used in a single Target store after the expiration of the parties' 2022 Contract, and he attaches images from that single Target store to his complaint. *See* DE 14 ¶ 27; *id.* Ex. C at 8-11. Plaintiff's allegation that he found his image in a single store does not support his conclusory allegation that Target used his image in all, most, or any particular number of Target stores nationwide, continued to be use his image in those stores after expiration of the 2022 Contract, continued to do so when the Complaint was filed, or presently continues to do so.

Plaintiff's amended pleading alleges that Plaintiff's family and friends have allegedly seen his image at "a number of Target stores" since the expiration of the 2022 contract Term, but Plaintiff does not allege that he or anyone has observed "new materials" on display or that there is a plausible basis to find that Plaintiff's image continued or continues to be displayed in all or even most Target stores—which they are not. And, tellingly, Plaintiff does not even allege which stores—much less in which states—his friends and family purportedly saw his image in use. *See* DE 14, ¶¶ 37, 78. Mr. Branca would have this Court believe that finding his image in a single identified store a few months after his 2022 Contract Term expired makes plausible that his image was deliberately and maliciously used in over 1900 stores nationwide. There is no

plausible evidence to support such an allegation, and the Court should dismiss the Amended Complaint for Plaintiff's failure.

### 2.    Plaintiff fails to plausibly allege a Lanham Act claim.

In the same vein, Plaintiff's Count II recites elements of the relevant portion of the Lanham Act but "do[es] not permit the court to infer more than the mere possibility of misconduct, [and thus] the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (cleaned up).

In Count II, Plaintiff generally alleges portions of what is required to state a false endorsement claim under the Lanham Act (citing 15 U.S.C. § 1125(a)), but fails to properly allege the existence of all the required elements or allege sufficient facts. Plaintiff, whose asserted image is not and does not qualify as a federally registered trademark, has the burden of alleging and ultimately proving that his image is "distinctive" to prevail on a false endorsement claim under § 1125(a). *See, e.g., Facenda v. NFL Films¸* 542 F.3d 1007 (3d Cir. 2008).

In *Facenda*, plaintiff alleged that defendant used plaintiff's "distinctive," "recognizable," and "legendary" voice in a commercial without authorization, which allegedly resulted in confusion over plaintiff's unauthorized endorsement of defendant's goods in violation of 15 U.S.C. § 1125(a). 542 F.3d at 1011, 1014. The Third Circuit affirmed that a plaintiff asserting a § 1125(a) unregistered trademark claim must show that he has a legally protectable, "distinctive" mark. *Id* at 1014-15.

Here, Plaintiff has not alleged any facts showing that his image meets the requirements to be protected as an unregistered trademark under the Lanham Act. Further, Plaintiff's allegations under Count II do not even recite all of the required elements, let alone allege facts showing Plaintiff has stated a plausible claim.  For example, under *Facenda,* when the asserted mark is an individual's image or likeness, plaintiff must show that his image or likeness has a strong level

of recognition "among the segment of the society for whom the defendant's product is intended." *Id.* at 1019-20. Similarly, where "the advertisements at issue provide[] no information identifying [Lanham Act Plaintiffs] other than their pictures," dismissal is proper because "the misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was 'endorsing' a product, as opposed to lending her image to a company for a fee." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (cleaned up).

Concerning the required level of recognition element, Plaintiff's Amended Complaint states the following conclusory and irrelevant allegations:

   (a)   "Mr. Branca is obviously recognizable in the unauthorized photographs used by Target throughout their U.S. stores for commercial purposes;" and

   (b)   "Indeed, Mr. Branca was/is so recognized by many family, friends, colleagues, and consumers familiar with this widely used image."

DE 14 ¶¶ 77-78.

The fact that Plaintiff's family, friends, and colleagues recognize him or that consumers see the image does not show anything beyond that an unknown model lent his image to Target for a fee, rather than that Plaintiff's image is recognized "among the segment of the society for whom [Target's products are] intended." *Id.* at 1019-20. Plaintiff's allegation do "not form the basis for a false endorsement claim." *Electra*, 987 F.3d at 258.

Count II fails for this additional reason.

### 3.   Plaintiff fails to plausibly allege Counts III and IV.

Counts III and IV do not even bother to recite the elements of any cause of action in the multitude of states where Plaintiff claims he was allegedly harmed, let alone plead any facts allowing the Court to infer that Target has acted unlawfully in all those states. Where Plaintiff is obligated to do more than allege "labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do," to state a claim, the Court must dismiss because Plaintiff does not *even* recite the elements of the causes of action he attempts to assert, let alone state "enough factual matter (taken as true) to suggest that" Target allegedly harmed Plaintiff in all 50 states and Washington, D.C. *Twombly*, 550 U.S. at 555.

Plaintiff carries out his scattershot approach by generally referencing statutes and case law while failing to state claim elements and plausible facts in support of whatever claims he is trying to assert in each jurisdiction.  Target is thus left to guess at what aspects of the law Plaintiff is trying to direct Target to defend against—particularly where the cited cases address more than one tort.

Although Plaintiff states in his allegations that he means to state a claim for misappropriation of his image, *see* DE 14 ¶ 59, he does not do that in his claims alleging injury under numerous state statutes and at common law in all 50 states.

To state a claim for misappropriation of name or likeness, Plaintiff must show that "Defendant act with the purpose of taking advantage of the positive value and good will associated with another's reputation."  *Monarch v. Gorman*, No. 14-cv-5980, 2015 WL 5584555, at *2 (E.D. Pa. Sep. 22, 2015) (citation omitted).

In addition to failing to state his claims with any clarity, Plaintiff also states no facts plausibly showing that Target acted intentionally as required to state a claim for a right of privacy misappropriation claim.  *See id.* The Court should dismiss Counts III and IV for this additional reason as well. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) ("without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only fair notice but also the grounds on which the claim rests") (cleaned up).

The Amended Complaint is Plaintiff's second bite at the apple, and it fares no better than the original complaint.  Further amendment will be futile. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted," under the standard of FED. R. CIV. P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Because further "amendment would not cure the deficiency," dismissal with prejudice is warranted.  *Id.*

**C.**   **Any Claims for Conduct Prior to April 2023 Are Barred By the Statute of Limitations, Accord and Satisfaction, and Plaintiff's Own Statements.**

While the Amended Complaint contains various allegations regarding the parties' 2018 Contract and related events, Plaintiff's counsel represented to the Court during the Interim Pretrial Conference on December 20, 2023, that Plaintiff does not claim liability or damages for any conduct prior to April 22, 2023. Plaintiff's counsel similarly confirmed with Target's counsel via email that "As I stated to William and Judge Savage at the Conference, we believe the Complaint is clear that Mr. Branca's claims are for unauthorized use after April 21, 2023 only."  **Ex. A** to Declaration of Regina Murphy.  But, Plaintiff's counsel refused to stipulate that Plaintiff's claims are limited to post-April 21, 2023 conduct.  *See id.*

In addition to the exculpatory clause in both contracts barring any claims, the Court should dismiss any claims related to conduct prior to April 22, 2023 and preclude Plaintiff from asserting any causes of action against Target under the 2018 Contract light of Plaintiff's representations.

However, because Plaintiff refuses to stipulate, and for the avoidance of any doubt, Target includes below a brief discussion showing that the statute of limitations would bar any claims prior to the expiration of the 2022 Contract, as would accord and satisfaction.

1.  **The Statute of Limitations Bars Plaintiff's Claims Prior to the 2022 Contract**

As the court noted in *In re Est. of Reynolds* (on which Plaintiff relies), the right of publicity is a property right protecting injury to commercial interests, in contrast with injuries resulting from invasion of privacy by intrusion or publication of private facts. 327 P.3d 213, 215–16 (Ariz. Ct. App. 2014) (citing Restatement (Third) of Unfair Competition § 46 cmts. a, g and *Haelan Labs. Inc. v. Topps Chewing Gum, Inc.,* 202 F.2d 866, 868 (2d Cir. 1953).

Plaintiff alleges four Counts:

I.   Unauthorized Use of Name or Likeness under Pa. C.S.A. § 8316 (Count I);

II.  False Endorsement under 15 U.S.C. § 1125 "Lanham Act" (Count II);

III. Violation of Other State's Statutory Rights of Publicity and/or Privacy (Count III); and

IV.  Violation of Other State's Common Law Rights of Publicity and/or Privacy (Count IV).

The Term of the 2022 Contract began October 21, 2021 and ended April 21, 2023.  DE 14 Ex. B. Plaintiff did not file suit until November 13, 2023.  Thus, any pre-October 21, 2021 claims for violation of Pa. C.S.A. § 8316 are barred by Pennsylvania's two-year statute of limitations.  *See* 42 Pa. C.S.A. § 5524(7) ("Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.").

Any right to privacy claims Plaintiff is attempting to assert are also barred by Pennsylvania's one-year statute of limitations.  *See* 2 Pa. C.S.A. § 5523(1) ("action for libel, slander or invasion of privacy" "must be commenced within one year").[2]

---

[2] There is a split of opinion among Pennsylvania courts regarding whether 42 Pa. C.S.A. § 8316 has "subsumed the common law cause of action for misappropriation of identity." *See The*

As for Plaintiff's Lanham Act claims (Count II), although the Lanham Act itself does not contain a statute of limitations, the Third Circuit uses the analogous statute of limitations approach. *See e.g.*, *Am. Diabetes Assoc. v. Friskney Family Trust,* 177 F. Supp. 3d 855, 878 (E.D. Pa. 2016) ("The Third Circuit has generally followed the traditional practice of borrowing the most analogous statute of limitations from state law").  Here, the most analogous statute is Pa. C.S.A. § 8316, concerning the right to publicity for a person's name or likeness for commercial gain. *See* 15 U.S.C. § 1125(a)(1) ("Any person who in connection with any good and services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . in commercial advertising, is liable to the person for resulting damages").

Thus Plaintiff's Lanham Act claims are barred by the status of limitations for having been brought more than two years after October 21, 2021 as well.

### 2.    Accord and Satisfaction Also Bars Plaintiff's Pre-April 2023 Claims.

Under Pennsylvania law, "[w]here there is a dispute or disagreement between [a] debtor and creditor as to their respective rights, a payment tendered in full satisfaction of the other's claim operates as an accord and satisfaction if the payment is accepted and retained." *Occidental Chem. Corp. v. Envtl. Liners, Inc.*, 859 F. Supp. 791, 793 (E.D. Pa. 1994) (quoting *Lacacher v. Kerson*, 48 A.2d 857, 858 (Pa. 1946)). Accord and satisfaction requires the elements of a contract: offer, acceptance and consideration [, and t]he consideration is the resolution of an unliquidated or disputed claim." *Occidental Chem.*, 859 F. Supp. at 793.

---

*Choice Is Yours*, 2015 WL 5584302, at *4 (noting split) (citations and internal quotation marks omitted).  *See also Facenda,* 542 F.3d at 1013, n.2 (noting "Pennsylvania's right-of-publicity statute subsumed the common-law tort of invasion of privacy").

Ignoring the exculpatory clause that he agreed to, Plaintiff alleges, with no facts in support, that he "notified" Target that it was using Plaintiff's image without his authorization after the Term of the 2018 Contract expired, and that he then entered into the 2022 Contract with a Term that "retroactively authorized Target to use Mr. Branca's likeness" during the period of the alleged unauthorized use prior to the 2022 Contract. DE 14 ¶¶ 18-20.

Taking those facts as true, which Target disputes, Plaintiff has plead a bona fide dispute between a debtor and creditor, and a full payment accepted by the creditor to satisfy the alleged claim. Because Plaintiff alleges that he essentially resolved any possible dispute with Target by securing a retroactive Term that predated the 2022 Contract, Plaintiff effected accord and satisfaction of any alleged disputes arising from the end of the Term of the 2018 Contract—not to mention that Plaintiff authorized the use of his image under the 2019 Contract from March 31, 2020 until October 31, 2021. *See Occidental Chem.*, 859 F. Supp. at 793.

### D. The Court Should Strike the Portions of The Complaint Relying on Material Disclosed Pursuant to FED. R. EVID. 408.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Del. Health Care Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-92 (D. Del. 1995). Generally, "motions to strike are not favored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *River Rd. Dev. Corp. v. Carlson Corp.*-Ne., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) (granting motion to strike from pleading terms that would cause undue difficulty in responding to the claim).

Under FED. R. EVID. 408, no party may offer as evidence to "either to prove or disprove the validity or amount of a disputed claim . . . conduct or a statement made during compromise negotiations about the claim," subject to certain exceptions in criminal cases which obviously do not apply in this civil matter. As the Advisory Committee's note to Rule 408 shows, a key reason for excluding such evidence "is promotion of the public policy favoring the compromise and settlement of disputes," and to promote "freedom of communication with respect to compromise." FED. R. EVID. 408 advisory committee's note (citing McCormick §§ 76, 251).

Here, in support of his claims, Plaintiff improperly offers evidence of statements made by Target's counsel that are protected by FED. R. EVID. 408. *See* DE 14 ¶¶ 29-32. Plaintiff's conduct confounds the rule and defeats its very purpose. Equally improper, Plaintiff mischaracterizes those protected statements by alleging Target's counsel did not confirm pre-suit whether Plaintiff's image had been removed from all Target stores (*see id.* ¶ 31), when Plaintiff's counsel is well aware that is untrue. *See* Gallagher Declaration ¶¶ 3-4. Plaintiff's counsel declined to withdraw this false allegation from the Amended Complaint. *See id.* ¶ 5.

The Court should thus strike from the Amended Complaint paragraphs 29-32 relying on alleged statements or omissions protected by Fed. R. Evid. 408. *See, e.g., Bergman v. Jefferson-Pilot Life Ins. Co.*, No. Civ. A. 03-4459, 2003 WL 23142155, at *1 (Dec. 30, 2003) (granting motion to strike evidence of conduct during settlement negotiations because "F.R.E. 408 explicitly bars 'evidence of conduct or statements made in compromise negotiations' to prove liability") (quoting FED. R. EVID. 408).

## IV.    CONCLUSION

For the foregoing reasons, Defendant Target respectfully requests that the Court dismiss the Amended Complaint with prejudice, as this is Plaintiff's second bite at the apple and continued

attempts to re-plead are futile.  Should the Court not dismiss the entire Amended Complaint, Target

respectfully requests that the Court at a minimum strike ¶¶ 29-32 from the Amended Complaint.


Dated: February 5, 2024                         BARNES & THORNBURG LLP

                                                /s/  *Regina S.E. Murphy*
                                                Regina S.E. Murphy, Esquire
                                                Attorney I.D. No. 309332
                                                William J. Burton, Esquire
                                                Attorney I.D. No. 322269
                                                BARNES & THORNBURG LLP
                                                222 Delaware Avenue, Suite 1200
                                                Wilmington, DE  19801
                                                (302) 300-3475
                                                gigi.murphy@btlaw.com
                                                william.burton@btlaw.com

                                                *Attorneys for Defendant Target Corporation*
                                                .

<u>**CERTIFICATE OF SERVICE**</u>

I, Regina S.E. Murphy hereby certify that on February 5, 2024, I caused a copy of the

foregoing **Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's**

**Amended Complaint Pursuant to FED. R. CIV. P. 12(b)(6) and to Strike Pursuant to FED. R.**

**CIV. P. 12(F)** to be electronically filed and served on the following counsel via e-filing and email:

M. Kelly Tillery, Esq.
Alec J. Johnson, Esq.
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
ktillery@saxtonstump.com
ajj@saxtonstump.com

/s/  *Regina S.E. Murphy*
Regina S.E. Murphy, Esquire
Attorney I.D. No. 309332